IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | 09 CR 696 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Hon. Charles R. Norgle |
| | ) | |
| BYRON CATHEY, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Charles R. Norgle, District Judge

Before the court is Defendant Byron Cathey's Motion for Judgment of Acquittal or, As a Less Preferred Alternative, a New Trial. For the following reasons, the motion is denied.

## I. BACKGROUND

On October 17, 2011, a jury found Defendant guilty of drug conspiracy, 21 U.S.C. § 846, and drug distribution, id. § 841(a)(1), involving 5 kilograms or more of cocaine. Defendant argues that the jury verdict should be set aside and a judgment of acquittal entered under Rule 29(c). In the alternative, Defendant argues he should receive a new trial pursuant to Rule 33.

## II. DISCUSSION

In a Rule 29(c) challenge, a defendant "faces a nearly insurmountable hurdle." United States v. Howard, 619 F.3d 723, 726 (7th Cir. 2010). The court views the evidence "in the light most favorable to the government and will uphold the jury's verdict so long as any rational trier of fact could have found the essential elements of the crime

beyond a reasonable doubt." Id. (quoting United States v. Garcia, 580 F.3d 528, 534 (7th Cir. 2009)). The court does not "weigh the evidence or assess the credibility of witnesses." Id. In this case, the government presented recordings of phone conversations among Defendant, an informant, and a co-defendant; videos of in-person meetings among the three men that culminated in a $150,000 drug sale; the informant's testimony that Defendant brokered the August 12, 2009 purchase and would receive a fee for doing so; and government agents' testimony regarding the investigation and their surveillance of the drug transaction itself. As discussed in detail below, from this evidence a rational jury could have found all of the essential elements of both conspiracy and distribution of cocaine, as well as that the amount of cocaine was 5 kilograms or more.

As to the drug conspiracy count, Defendant argues that because a government informant, Tommie Jones ("Jones"), participated in the charged conspiracy, there cannot be criminal liability for Defendant. Citing United States v. Contreras, 249 F.3d 595 (7th Cir. 2001), Defendant contends that as a matter of law a defendant cannot conspire with an informant, and that because the informant in this case agreed that Defendant would be paid for his role in the drug deal, there is no proof of a conspiracy. In Contreras, the court both ruled out government informants as co-conspirators and distinguished conspiratorial relationships from mere buyer-seller relationships. Id. at 599. There, court found that the only possible agreement was between the defendant and a government informant, which ruled out a conspiracy, whereas the other relationships were simple buyer-seller relationships. Id.

In this case, consistent with Contreras, the court instructed the jury that Jones, the government's informant, could not be a co-conspirator with Defendant. See also United

2

States v. Corson, 579 F.3d 804, 811 (7th Cir. 2009) ("A defendant is not liable for conspiring solely with an undercover government agent or a government informant."). However, Contreras should not be read to bar liability beyond a "simple" buyer-seller relationship. See United States v. Harris, 567 F.3d 846, 851-52 (2009). In Harris, the panel found that although a drug dealer may have a simple buyer-seller relationship with his customers, he may be a co-conspirator with the people arranging the transportation and sale of bulk product. Id. Distinguishing Contreras, the Seventh Circuit in Harris reasoned that defendants who "put their money and transportation resources together" and "hav[e] a stake in each other's success" while "knowing that . . . others intended to resell [the drugs]" may be engaged in conspiracy. Id.

In this case, Defendant arranged a buy between Jones and co-defendant Douglas Greer ("Greer"). The evidence showed that Defendant took part in a series of price negotiations. It showed that Defendant had a stake in the outcome because he got paid, per kilogram of cocaine, if the deal went through. It also showed that Defendant brokered the deal from beginning to end, starting by connecting Jones and Greer, continuing by relaying messages between the two, and ending by driving with Jones to the location of the deal and keeping a seemingly agitated Jones calm until Greer arrived. Unlike the defendant in Contreras, Defendant here was a broker in a high-stakes drug deal—far from "a simple buyer-seller relationship." Harris, 567 F.3d at 852 (citing United States v. Williams, 298 F.3d 688, 692 (7th Cir. 2002)). The court concludes that a rational jury could have found beyond a reasonable doubt every element of the drug conspiracy count. See Howard, 619 F.3d at 726.

As to the drug distribution count, the government's theory of liability is aiding and abetting. Defendant argues he could not have aided and abetted Greer because it was Jones who asked Defendant for a meeting with Greer and agreed to a fee for Defendant. Defendant argues that as a matter of law he could not aid or abet Jones. To the contrary, the Seventh Circuit has found that the fact that an informant encourages a Defendant to arrange a meeting to discuss or carry out illegal affairs does not preclude liability for aiding and abetting. See United States v. Sims, 895 F.2d 326, 326-330 (7th Cir. 1990).

In Sims, the defendant's business partner, directed by the government, urged the defendant to arrange a series of meetings to plan a wire fraud. Id. at 327. The defendant did not know his business partner was working for the government. Id. After initially resisting, the defendant reluctantly—and out of a desire for money—agreed to do what his partner-informant instructed. Id. at 328 ("[The defendant] said that although he did not fully understand the plan, there was a lot of money for everyone to make."). The Sims jury convicted him of aiding and abetting, which was affirmed. Id. at 330.

In this case, Defendant knew the drug deal was with Greer, worked to make it happen, and, like the Sims defendant, believed he would profit financially. However, unlike the Sims defendant, nothing indicates Defendant tried in vain to resist Jones's discussion of setting up a drug deal involving Greer. The evidence instead showed Defendant was a willing participant off the bat. A rational jury could have found beyond a reasonable doubt that Defendant aided and abetted Greer on every element. See Howard, 619 F.3d at 726.

Defendant also argues that, on both counts, the amount of cocaine attributed to each conviction is too high. The jury found Defendant responsible for 5 or more

4

kilograms of cocaine. Defendant argues the jury was wrong because trial evidence showed the following: (1) that Jones told Greer he wanted 5 kilograms; (2) that Greer later said he was giving Jones 7 kilograms; (3) that the actual weight was 6.8 kilograms; (4) and that sometimes drug dealers short their buyers by providing less product than promised. If Defendant is right, (1), (2), and (3) suggest the jury heard that Defendant received 6.8 to 7 kilograms, which is more than 5 kilograms. All (4) suggests is that, as a general matter, drug dealers are dishonest and might fix the scales. Furthermore, a conspirator is liable for the foreseeable crimes that his co-conspirators commit in furtherance of the conspiracy. Pinkerton v. United States, 328 U.S. 640, 646-47 (1946); United States v. Hach, 162 F.3d 937, 951 (7th Cir. 1998). The court finds that a rational jury could find beyond a reasonable doubt that Defendant is responsible for 5 kilograms or more of cocaine as to both counts. See Howard, 619 F.3d at 726.

Defendant also moves under Rule 33, which provides that "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). The "task is to determine whether the verdict is so contrary to the weight of evidence that a new trial is required." United States v. Chambers, 642 F.3d 588, 592 (7th Cir. 2011) (citing United States v. Washington, 184 F.3d 653, 657 (7th Cir. 1999)). "A defendant is [also] entitled to a new trial if there is a reasonable possibility that a trial error had a prejudicial effect upon the jury's verdict." United States v. Van Eyl, 468 F.3d 428, 436 (7th Cir. 2006) (citing United States v. Berry, 92 F.3d 597, 600 (7th Cir. 1996)).

Defendant argues that the court erred in ruling on Defendant's objections to a host of jury instructions. In its response brief, the government observes that Defendant fails to develop any new arguments on these issues. Government's Resp. to Def. Cathey's Mot.

for Acquittal or for a New Trial 7 (hereinafter "Gov't Resp."). The court agrees that Defendant's arguments are undeveloped. A court need not respond to undeveloped arguments. See United States v. Olmeda-Garcia, 613 F.3d 721, 723-24 (7th Cir. 2010); see also Harvey v. Town of Merrillville, 649 F.3d 526, 532 (7th Cir. 2011) (arguments that are perfunctory, undeveloped, or unsupported by authority are waived); United States v. Turcotte, 405 F.3d 515, 536 (7th Cir. 2005) (same). It is enough that, as the government argues, see Gov't Resp. 7-9, the objected-to instructions closely track pattern instructions, are verbatim pattern instructions, or are in line with well-settled law.

## CONCLUSION

In light of the government's evidence in this case, the court cannot say the verdict is against the manifest weight of the evidence or that trial errors, if any, had a prejudicial effect on the verdict. Moreover, the court finds a rational jury could have found every element of every count beyond a reasonable doubt, including the drug weight. Accordingly, Defendant's arguments under both Rule 33 and Rule 29 fail. Defendant's motion for a judgment of acquittal or for a new trial is denied.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATED: 11/30/11

6